UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS
CENTRAL DIVISION
CIVIL NO._____

---

BETH R. CRENSHAW, MICHAEL M. CRENSHAW,
TYLER E. CRENSHAW, SYDNEY A. MAYZER,
MARK A. MAYZER, PATRICIA E. MALONEY,
GARY P. DULAC, and MARGARET L. LENA,

      Plaintiffs,

v.

PHILIPS NORTH AMERICA LLC,

      Defendant.

**COMPLAINT**

**and**

**JURY DEMAND**

---

Plaintiffs allege:

## I.  INTRODUCTION

1.      This is a groundwater contamination case.  It is brought under the citizen suit

provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"),

the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c.

21E, and common law theories of continuing private nuisance, continuing trespass, negligence,

and strict liability for abnormally dangerous activity.

2.      The eight Plaintiffs are, or recently have been, residents and/or owners of several

residential properties in the Town of Millville, Massachusetts.  Their wells have been

contaminated, or are at risk of contamination, by toxic chemicals released into groundwater from

an underground storage tank at Defendant's former manufacturing facility at 51 Industrial Drive

in North Smithfield, Rhode Island (the "Site").  These chemicals, including the carcinogens

trichloroethylene ("TCE") and tetrachloroethylene ("PCE"), have been migrating northward in groundwater toward Millville since their release at the Site approximately 40 years ago, creating an "imminent and substantial endangerment to health" within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. § 6972(a)(1)(B).

3.      For the past eight years, the contamination and threatened contamination of Plaintiffs' wells with toxic chemicals has reduced the value of their properties and diminished their enjoyment thereof.  It has caused them great fear, anxiety, and distress.  It has been a source of enormous disruption and distraction in their lives.

4.      As relief in this action, Plaintiffs seek, *inter alia*, an injunction requiring that Defendant provide an alternative and permanent source of clean water for Plaintiffs and for all persons in their vicinity whose wells are at risk of contamination from the Site; an injunction requiring that, until and unless such an alternative is provided, Defendant regularly sample all wells at risk of such contamination; an award of damages to compensate Plaintiffs for the devaluation of their properties; an award of damages to compensate Plaintiffs for their diminished enjoyment of their properties and their associated psychological distress; an award of damages to compensate Plaintiffs for any out-of-pocket costs that they have incurred, or will incur, due to the contamination of their water; and an award of Plaintiffs' costs of litigation, including expert witness and attorney fees.

## II.  JURISDICTION AND VENUE

5.      This Court has jurisdiction over this action pursuant to 42 U.S.C. § 6972(a)(1)(B) (RCRA's citizen suit provision), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367(a) (supplemental jurisdiction).

6.      The Central Division of the Massachusetts District of the Federal Court is a proper venue for this action pursuant to 42 U.S.C. § 6972(a), because the endangerment to health alleged herein is occurring within this division of this district.

7.      Plaintiffs have complied with the notice provisions of RCRA's citizen suit provision.  *See* 42 U.S.C. § 6972(b)(2)(A); 40 C.F.R. § 254.2(a)(1).  On November 29, 2022, by letter sent via certified mail, return receipt requested, Plaintiffs gave Defendant notice of their intent to sue for the RCRA claim alleged herein.  Exhibit 1 to this Complaint is a copy of Plaintiffs' Notice Letter.  Copies of Plaintiffs' Notice Letter were simultaneously mailed to United States Environmental Protection Agency ("EPA") Administrator Michael S. Regan, EPA Region 1 Administrator David W. Cash, and Massachusetts Department of Environmental Protection ("MassDEP") Commissioner Martin Suuberg.  The return receipts or other documentation evidencing the receipt of Plaintiffs' Notice Letter by Defendant's Chief Executive Officer Vitor Rocha, Defendant's registered agent Corporation Service Company, Mr. Regan, Mr. Cash, and Mr. Suuberg are combined as Exhibit 2 to this Complaint.[1]  Delivery upon each of these persons occurred on or before December 5, 2022, more than 90 days prior to the filing of this Complaint.

8.      In conformance with 42 U.S.C. § 6972(b)(2)(F), Plaintiff is mailing copies of this Complaint to United States Attorney General Merrick B. Garland, EPA Administrator Michael S. Regan, and EPA Region 1 Administrator David W. Cash.

---

[1] The "green card" evidencing delivery of Plaintiffs' Notice Letter upon Defendant's registered agent Corporation Service Company was never returned to Plaintiffs' counsel by the U.S. Postal Service.  In its stead, as part of Exhibit 2, at pp. 3-5, Plaintiffs attach documentation from the Postal Service's online tracking service showing that delivery was made on December 2, 2022.

9.      Pursuant to 42 U.S.C. § 6972(b)(2)(B), certain enumerated actions by EPA will preclude a citizen's RCRA imminent and substantial endangerment claim.  EPA has taken none of those actions.  It has not commenced an action against Defendant under 42 U.S.C. § 6973 or 42 U.S.C. § 9606; it is not engaging in a removal action under 42 U.S.C. § 9604; it has not both incurred costs to initiate a Remedial Investigation and Feasibility Study under 42 U.S.C. § 9604 and diligently proceeded with a remedial action under 42 U.S.C. § 9601 *et seq.*; and it has not obtained a court order or issued an administrative order under 42 U.S.C. § 6973 or 42 U.S.C. § 9606.

10.     Pursuant to 42 U.S.C. § 6972(b)(2)(C), certain enumerated actions by a State will preclude a citizen's RCRA imminent and substantial endangerment claim.  Neither the Commonwealth of Massachusetts nor the State of Rhode Island has taken any of those actions.  Neither has commenced an action against Defendant under 42 U.S.C. § 6972(a)(1)(B); neither is engaging in a removal action under 42 U.S.C. § 9604; and neither has both incurred costs to initiate a Remedial Investigation and Feasibility Study under 42 U.S.C. § 9604 and diligently proceeded with a remedial action under 42 U.S.C. § 9601 *et seq.*

### III.  PARTIES

### Plaintiffs

11.     Plaintiffs Beth R. Crenshaw, Michael M. Crenshaw, and Tyler E. Crenshaw ("the Crenshaws") have resided at 19B Providence Street in Millville, Massachusetts, since 2005.  Tyler is the 20-year-old son of Beth and Michael.  19B Providence Street is a unit in a condominium known as "Providence Street Condominium # 2."  The well serving Providence Street Condominium # 2 is contaminated with the chemicals TCE, PCE, and 1,1,2-Trichloro-1,2,2-trifluoroethane ("Freon-113").

12.     Plaintiffs Sydney A. Mayzer and Mark A. Mayzer ("the Mayzers"), parents of Beth Crenshaw and grandparents of Tyler Crenshaw, have jointly owned the 19B Providence Street condominium unit since 2005, first in their individual capacities (between 2005 and 2017) and then as Trustees of the Mayzer Family Revocable Trust (between 2017 and the present). The Mayzers reside in Holliston, Massachusetts.

13.     Plaintiff Patricia E. Maloney has owned and resided at 19A Providence Street in Millville, Massachusetts since 1993.  19A Providence Street is a unit in Providence Street Condominium # 2.

14.     Plaintiff Gary P. Dulac owned 19C Providence Street in Millville, Massachusetts, between 2004 and 2023.  Mr. Dulac resided at 19C Providence Street between 2004 and 2012. 19C Providence Street is a unit in Providence Street Condominium # 2.[2]  Mr. Dulac now resides in Bellingham, Massachusetts.

15.     Plaintiff Margaret L. Lena has owned and resided at a single-family home at 22 Providence Street in Millville, Massachusetts since 2008.  22 Providence Street is directly across the street from 19 Providence Street.

**Defendant**

16.     Defendant Philips North America LLC ("Philips") is a limited liability company organized under the laws of Delaware and headquartered at 222 Jacobs Street, Cambridge, Massachusetts.  Philips is a manufacturer of consumer and healthcare products.

17.     Philips has been named Philips North America LLC since 2017.  Prior to that, between approximately 1993 and 2017, Philips was named "Philips Electronics North America

---

[2] Providence Street Condominium # 2 will alternatively be referred to as "19 Providence Street" in this Complaint.

Corporation" ("PENAC"). Prior to that, Philips was named "North American Philips Corporation" ("NAPC"). Between approximately 1955 and 1988, Philips (then as NAPC) wholly owned a subsidiary named "Amperex Electronic Corporation" ("Amperex"). Amperex was merged into NAPC in approximately 1988.

18.     Philips is the successor to all liabilities of PENAC, NAPC, and Amperex.

19.     Between approximately 1959 and 2000, Philips (first as NAPC through Amperex, then directly as NAPC, then as PENAC)[3] owned and operated an electronic components manufacturing facility (the "Facility") at 51 Industrial Drive in North Smithfield, Rhode Island (the "Site"). Exhibit 3 to this Complaint is an aerial photograph showing the location of the Site in North Smithfield as well as Plaintiffs' properties at 19 and 22 Providence Street in Millville.

## IV.  GENERAL ALLEGATIONS

20.     From the 1960s into the 1980s, in connection with its manufacturing processes, Philips/Amperex used, generated and stored numerous chlorinated volatile organic compounds ("CVOCs") at the Site, including TCE, PCE, and Freon-113. After being used, these chemicals were stored in one or more underground storage tanks ("USTs") at the Site pending their transport to a designated disposal facility.

21.     Prior to 1982, Philips/Amperex had no groundwater monitoring program at the Site.

22.     Prior to 1982, Philips/Amperex conducted no testing of groundwater for CVOCs at the Site.

---

[3] The term "Philips," as used hereinafter, encompasses Philips North America LLC, PENAC and NAPC. The term "Philips/Amperex," as used hereinafter, shall be used to refer to Amperex.

23.     Prior to 1982, Philips/Amperex inspected its USTs at the Site no more than once every six months.

24.     In February of 1982, upon a joint inspection of the Site by the Rhode Island Department of Environmental Management ("RIDEM") and EPA, RIDEM cited Philips/Amperex for failing to monitor groundwater and failing to conduct and/or record weekly inspections of its USTs, in violation of Rhode Island's hazardous waste management regulations. RIDEM ordered Philips/Amperex to promptly develop and implement a groundwater monitoring program at the Site, to inspect its USTs weekly, and to make records of such inspections.

25.     In 1982, pursuant to RIDEM's order, Philips/Amperex began monitoring groundwater at the Site.  Its monitoring revealed extensive contamination of groundwater with chemicals including TCE, PCE and Freon-113.  The source of the contamination was a leaking UST at the Site.

26.     Groundwater flows in a northerly direction from the Site.

27.     Since 1982, under the supervision of RIDEM, Philips/Amperex and Philips have taken various measures aimed at remediating the contamination at and around the Site, including soil removal and several methods of groundwater treatment.  Notwithstanding these measures, in recent years, high levels of CVOCs such as TCE have continued to be detected around the Site, particularly in several bedrock groundwater monitoring wells located to the north of the source area.  Exhibit 4 to this Complaint is a "Semi-Annual Status Report" written by Philips' hydrogeological consultant Aptim Environmental & Infrastructure, Inc. (APTIM) to RIDEM in July of 2020, discussing (at Parts 3.4.4 and 5.0) the astronomical levels of TCE being detected in bedrock monitoring wells to the north of Industrial Drive at that time—for example, 3,500 micrograms per liter (μg/L) in the Site's monitoring well "BMW-18."  Exhibit 5 to this

Complaint is a plan of the Site that was appended to APTIM's report.  Plaintiffs' counsel has highlighted the location of BMW-18 on the plan, writing "BMW-18" in purple above it.

28.     Continuously in the decades since the release of TCE, PCE, and Freon-113 at the Site, these contaminants have been spreading northward in bedrock groundwater toward Millville, Massachusetts.  North Smithfield and Millville are neighboring Towns on either side of the Rhode Island-Massachusetts border.

29.     In 2004, TCE and PCE were detected in residential wells at 254, 262, and 270 Mechanic Street in North Smithfield.  These wells are located north of the Site.  TCE, PCE, and Freon-113 were later detected nearby at 190, 246, and 250 Mechanic Street in North Smithfield. Subsequently, TCE, PCE, and Freon-113 were detected further north in residential wells at 250, 252, and 254 Old Great Road in North Smithfield, just south of the Rhode Island-Massachusetts border.  Exhibit 6 to this Complaint is an aerial photograph from an APTIM submittal to MassDEP showing, *inter alia*, the locations of these properties in North Smithfield.

30.     In July of 2015, TCE, PCE, and Freon-113 were detected in the well at 19 Providence Street (i.e., Providence Street Condominium # 2) in Millville.  The contamination was discovered when Plaintiff Beth Crenshaw, resident of 19B Providence Street, had her water tested.

31.     TCE is carcinogenic to humans by all routes of exposure—inhalation, oral ingestion, and dermal absorption.  Prolonged exposure may increase the risk of kidney cancer, liver cancer, malignant lymphoma, and non-Hodgkin's lymphoma.  Additionally, it may cause cardiovascular damage, neurological damage, immunological damage, and birth defects.

32.     PCE is likely carcinogenic to humans by all routes of exposure.  Prolonged exposure may lead to an increased risk of kidney cancer, liver cancer, bladder cancer, multiple myeloma, and non-Hodgkin's lymphoma.

33.     Pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300f *et seq.* ("SDWA"), EPA sets Maximum Contaminant Levels ("MCLs") for hazardous substances in public water systems.  The MCL for both TCE and PCE is 5 μg/L.  *See* 40 C.F.R. § 141.61.

34.     Pursuant to M.G.L. c. 111, § 160, MassDEP sets Massachusetts Maximum Contaminant Levels ("MMCLs") for hazardous substances in public water systems.  The MMCL for both TCE and PCE is 5 μg/L.  *See* 310 C.M.R. § 22.07B.

35.     Pursuant to the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, MassDEP sets levels of hazardous substances which, when detected in a private drinking water well, trigger the most urgent and rigorous requirements for remedial response action.  These levels are known as Reportable Concentration Groundwater-1 ("RCGW-1," or "GW-1") standards.  *See* 310 C.M.R. §§ 40.0311(6), 40.0412(1), 40.0414.  The GW-1 standard for both TCE and PCE is 5 μg/L.  *See* 310 C.M.R. § 40.1600.

36.     In July of 2015, when Beth Crenshaw had her water at 19B Providence Street tested, TCE was detected at 17 μg/L.  PCE was detected at 8.6 μg/L.  Informed of the contamination, MassDEP instructed the Crenshaws and their neighbors at 19 and 25 Providence Street (which draws from the same well) to stop drinking their water immediately.  MassDEP began providing bottled water for the residents and arranging for the installation of point-of-entry water treatment systems ("POET systems") in their buildings, which installations were completed in October of 2015.  In the meantime, another property, 3 Providence Street, was found to have a contaminated well.

37.     Since July of 2015, sampling of the well at 19 Providence Street has consistently shown the presence of TCE, PCE, and Freon-113, with TCE and PCE consistently measuring well above regulatory health standards.  Moreover, the levels have trended significantly higher over the past three years.  Exhibit 7 to this Complaint is a Table showing levels of TCE and PCE in the 19 Providence Street well between 2015 and 2023.  Between March of 2020 and the present, the average concentration of TCE has been 26.6 µg/L, while the average concentration of PCE has been 12.5 µg/L; in contrast, between July of 2015 and February of 2020, the average concentration of TCE was 20.3 µg/L, while the average concentration of PCE was 9.1µg/L.  This upward trend indicates that these contaminants continue to migrate from the Site to the aquifer beneath 19 Providence Street.

38.     Subsequent to 2015, MassDEP spent several years investigating potential sources of the Providence Street contamination.  It concluded that the Site was a likely source.  On November 1, 2018, it issued to Philips a Notice of Responsibility (NOR) for the contamination.  According to the NOR, after consultation with RIDEM and EPA, MassDEP believed that the Facility was a likely source "[g]iven the northerly groundwater flow direction, the high concentrations of CVOCs known to be present in the deep bedrock aquifer at [the Site], and the locations of impacted properties along Mechanic Street and Old Great Road and across the Massachusetts state boundary along Providence Street in Millville … ."  Exhibit 8 to this Complaint is a copy of the NOR.

39.     In response to the NOR, on December 13, 2018, Philips, through its consultant APTIM, filed a letter with MassDEP denying responsibility for contaminating the Providence Street wells.  Not until 2021, approximately three years after receiving the NOR, did Philips

relent to MassDEP pressure and declare its willingness to participate in certain Immediate

Response Action ("IRA") activities in connection with the Providence Street contamination.

40.     As outlined in an IRA Plan submitted to MassDEP by APTIM on behalf of

Philips in November of 2021, Philips agreed to (1) assume responsibility for the operation,

testing, and maintenance of the POET systems at 3, 19 and 25 Providence Street, (2) sample 18

additional residential wells in Millville in the vicinity of the contaminated properties, and (3) "if

determined feasible," extend a North Smithfield municipal water line down Providence Street to

service the contaminated properties.

41.     Philips conducted sampling of additional residential wells on Providence Street in

2022.  In both April and July of 2022, its sampling revealed the presence of PCE in wells at 33

and 40 Providence Street.  When these wells had last been sampled, in October of 2015, no PCE

had been detected.

42.      In response to the detections at 33 and 40 Providence Street, Philips, through

APTIM, declared to the owners of these properties that the levels of PCE in their wells were too

low to warrant continued sampling.  Philips has conducted no more sampling of these wells.  It

has not provided the residents of 33 and 40 Providence Street with bottled water.  It has not

provided them with water filtration systems.

43.     The proposed extension of a municipal water line from North Smithfield to

Providence Street has not occurred.  While Plaintiffs are informed that construction of such an

extension is scheduled to begin in 2023, they are rightfully skeptical, as it has now been 19

months since Philips announced its plan to bring about the extension, and construction has not

begun.  If and when the extension is constructed, as far as Plaintiffs are aware, it will only serve

3, 19, and 25 Providence Street.  It will serve no other Millville properties.  It will not serve the

contaminated properties at 33 and 40 Providence Street. It will not serve Plaintiff Margaret

Lena's property at 22 Providence Street, which is directly across the street from 19 Providence

Street.

44.     MassDEP is not requiring that Philips conduct any future sampling of wells on or

around Providence Street, aside from continued sampling of the contaminated wells at 3, 19, and

25 Providence Street (pending construction of the proposed water line). There are approximately

20 residential properties in Millville within 1,000 feet of 19 Providence Street that will not

receive municipal water under the proposed plan. These properties are located on Providence

Street and on three roads in a development immediately to its north (Afonso Way, Dominic

Street, and Tina Road). Exhibit 9 to this Complaint is an aerial photograph with a red circle

encompassing these properties. As described above, two of them, 33 and 40 Providence Street,

are already contaminated with PCE; the rest, including that of Plaintiff Margaret Lena at 22

Providence Street, are at high risk of contamination. This risk is underscored by the spread of

PCE to 33 and 40 Providence Street between 2015 and 2022, a spread that both Philips and

MassDEP have evidently chosen to disregard.

45.     The contamination of the well at 19 Providence Street has devalued 19B

Providence Street (the property of Plaintiffs Sydney and Mark Mayzer), 19C Providence Street

(the former property of Plaintiff Gary Dulac), and 19A Providence Street (the property of

Plaintiff Patricia Maloney), as renters and homebuyers are generally uninterested in, or are less

interested in, homes with wells contaminated by toxic chemicals.

46.     The contamination of the well at 19 Providence Street has caused great distress

for those Plaintiffs—Beth Crenshaw, Michael Crenshaw, Tyler Crenshaw, Gary Dulac, and

Patricia Maloney—who have resided there. While it cannot be known when the 19 Providence

Street well was first contaminated, Beth Crenshaw's 2015 discovery presumably did not mark the contamination's starting point. The Crenshaws, Gary Dulac, and Patricia Maloney are haunted, and forever will be haunted, by the knowledge that they were likely exposed to large quantities of carcinogens for many years. They are terrified about their health. The POET system installed by MassDEP at 19 Providence Street in 2015 does not allay these Plaintiffs' continuing distress over their prior exposure.

47.     Those Plaintiffs who have resided at 19 Providence Street since 2015, the Crenshaws and Patricia Maloney, are afraid to use their water notwithstanding the POET system in their building. They do not trust that the system is filtering out all of the contaminants from their water, and with good reason. Testing of the system shows only that it reduces the TCE, PCE, and Freon-113 in their water below laboratory detection limits. Beneath those limits, it is unknown to what degree the chemicals pass through. That their current exposure may be a fraction of their unmitigated pre-2015 exposure does not greatly comfort the Crenshaws and Ms. Maloney, who should not have to worry about their water at all. Moreover, the carbon filtration vessels of the POET system degrade over time, as was evidenced by the substantial passage of Freon-113 through the first of the system's two vessels in recent years. In short, a filter is not a substitute for a clean well. For the Crenshaws and Ms. Maloney, every use of their water—for drinking, bathing, cooking, washing dishes, washing clothes, washing hands, brushing teeth, using ice, etc.—is fraught. They live in fear that they continue to be exposed to toxic chemicals in their water, or at any moment will be, thus compounding their anxiety over their past exposure, deepening their sense of dread concerning their health, and severely diminishing their enjoyment of their homes.

48.     The contamination of the wells at 3, 19, 25, 33, and 40 Providence Street has devalued Plaintiff Margaret Lena's property at 22 Providence Street, as renters and homebuyers are generally uninterested in, or are less interested in, homes with wells at risk of contamination by toxic chemicals.

## V.   CLAIMS

### Count 1:   RCRA Imminent and Substantial Endangerment

49.     Paragraphs 1-48 of this Complaint are hereby re-alleged and incorporated by reference herein.

50.     Count 1 is brought against Philips by all Plaintiffs.

51.     The objectives of RCRA are "to promote the protection of health and the environment and to conserve valuable material and energy resources … ."  42 U.S.C. § 6902(a).

52.     RCRA authorizes a citizen to commence an action "against any person … including any past or present generator, past or present transporter, or past or present owner or operator of a treatment, storage, or disposal facility, who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment."  42 U.S.C. § 6972(a)(1)(B).  In such an action, a court may order a defendant to take any measure necessary to abate such endangerment.  *Id.* at § 6972(a).

53.     "Solid waste," within the meaning of 42 U.S.C. § 6972(a)(1)(B), means, *inter alia*, any discarded "solid, liquid, semisolid, or contained gaseous material resulting from industrial … operations … ."  42 U.S.C. § 6903(27).  The TCE, PCE, and Freon-113 that Philips/Amperex placed in USTs at the Site constitute "solid waste."

54.     "Hazardous waste," within the meaning of 42 U.S.C. § 6972(a)(1)(B), is "a solid waste, or combination of solid wastes, which because of its quantity, concentration, or physical, chemical, or infectious characteristics may (A) cause, or significantly contribute to an increase in mortality or an increase in serious irreversible, or incapacitating reversible, illness; or (B) pose a substantial present or potential hazard to human health or the environment when improperly treated, stored, transported, or disposed of, or otherwise managed."  42 U.S.C. § 6903(5).  Due to their carcinogenicity and other adverse health effects, as previously described, the TCE and PCE that Philips/Amperex placed in USTs at the Site constitute "hazardous waste."

55.     "Storage," within the meaning of 42 U.S.C. § 6972(a)(1)(B), means, *inter alia*, "the containment of hazardous waste, either on a temporary basis or for a period of years … ."  42 U.S.C. § 6903(33).  Philips/Amperex's containment of TCE and PCE in USTs at the Site constituted "storage."  The Facility was a "storage facility."

56.     "Disposal," within the meaning of 42 U.S.C. § 6972(a)(1)(B), means "the discharge, deposit, injection, dumping, spilling, leaking, or placing of any solid waste or hazardous waste into or on any land or water so that such solid waste or hazardous waste or any constituent thereof may enter the environment or be emitted into the air or discharged into any waters, including ground waters."  42 U.S.C. § 6903(3).  The leaking of TCE and PCE from Philips/Amperex's UST into groundwater at the Site constituted "disposal."  The Facility was a "disposal facility."

57.     Philips/Amperex's handling, storage, and disposal of TCE and PCE at the Site, and the resulting contamination of groundwater, present an imminent and substantial endangerment to the health of all persons who have been, or may be, exposed to such contaminated groundwater.  This includes all Plaintiffs and all other persons with wells that have

been, or that may be, contaminated with TCE and PCE from the Site.  Philips is liable under 42

U.S.C. § 6972(a)(1)(B) for abating this endangerment.

## Count 2:  Property Damage under M.G.L. c. 21E, § 5

58.     Paragraphs 1-57 of this Complaint are hereby re-alleged and incorporated by

reference herein.

59.     Count 2 is brought against Philips by all Plaintiffs.

60.     M.G.L. c. 21E is the Massachusetts Oil and Hazardous Material Release

Prevention and Response Act.  In combination with the Massachusetts Contingency Plan, 310

C.M.R. § 40.0000 *et seq.*, it establishes certain rights and responsibilities of persons impacted by,

or responsible for, releases of oil and hazardous material to the environment.

61.     Under M.G.L. c. 21E, § 5(a), "any person who at the time of storage or disposal

of any hazardous material owned or operated any site at or upon which such hazardous material

was stored or disposed of and from which there is or has been a release or threat of release of

hazardous material … shall be liable, without regard to fault … to any person for damage to his

real or personal property incurred or suffered as a result of such release or threat of release."

62.     "Hazardous material," within the meaning of M.G.L. c. 21E, means "material

including but not limited to, any material, in whatever form, which, because of its quantity,

concentration, chemical, corrosive, flammable, reactive, toxic, infectious or radioactive

characteristics, either separately or in combination with any substance or substances, constitutes

a present or potential threat to human health, safety, welfare, or to the environment, when

improperly stored, treated, transported, disposed of, used, or otherwise managed. … The term

shall also include all those substances which are included under 42 U.S.C. Sec. 9601(14), but it

is not limited to those substances."  M.G.L. c. 21E, § 2.

63.     Under 42 U.S.C. § 9601(14), hazardous substances include "any toxic pollutant listed under section 307(a) of the Federal Water Pollution Control Act"—that is, 33 U.S.C. § 1317(a).

64.     The toxic pollutant list established under 33 U.S.C. § 1317(a) is at 40 C.F.R. § 401.15.  TCE and PCE are on the list.

65.     Under the authority of M.G.L. c. 21E, as part of the Massachusetts Contingency Plan, MassDEP has also established a list of hazardous materials.  *See* 310 C.M.R. § 40.0974. TCE and PCE are on the list.

66.     TCE and PCE are hazardous materials within the meaning of M.G.L. c. 21E, both by virtue of their toxicity and by virtue of their inclusion in the lists at 40 C.F.R. § 401.15 or 310 C.M.R. § 40.0974, or both.

67.     The Site's release of hazardous materials to groundwater has damaged Plaintiffs' real properties by diminishing their value.  This is because, as described above, renters and homebuyers are uninterested in, or are less interested in, properties whose water is contaminated (as with 19 Providence Street) or at risk of contamination (as with 22 Providence Street) by toxic chemicals.

68.     In the event and to the degree that municipal water is ultimately provided for Plaintiffs, a diminution of their property values will persist, both because their homes and neighborhood have been stigmatized by the contamination, and because their homes will carry a cost—that of paying for municipal water—that they had not previously carried.

69.     Philips is strictly liable under M.G.L. c. 21E, §5(a) for the damage to Plaintiffs' properties caused by the release of TCE and PCE at the Site.

## Count 3:  Continuing Private Nuisance

70.     Paragraphs 1-69 of this Complaint are hereby re-alleged and incorporated by reference herein.

71.     Count 3 is brought against Philips by all Plaintiffs except Margaret Lena.

72.     Under the common law of Massachusetts, a person is liable for private nuisance when, on property that he owns or controls, he creates, permits, or maintains a condition that causes a substantial and unreasonable interference with the use and enjoyment of property in the possession of another.  A continuing private nuisance occurs when the offending condition is ongoing.

73.     Philips' contamination of Plaintiffs' water has substantially and unreasonably interfered with their use and enjoyment of their properties.  As described above, Plaintiffs have suffered great distress.  Rather than a place of joy and comfort and security, their homes have become a source of anxiety, frustration, and fear.  Their properties have been tainted.  Their health has been jeopardized.  The contamination of their water is an enduring, menacing, and depressing fixture in their minds, severely diminishing the everyday quality of their lives.

74.     The contamination of Plaintiffs' water is ongoing.  To this day, TCE, PCE, and Freon-113 continue to flow to their properties from the Site.

75.     Philips' ongoing contamination of Plaintiffs' water with TCE, PCE, and Freon-113, and the resulting interference with Plaintiffs' use and enjoyment of their properties, constitutes a continuing private nuisance.

## Count 4:  Continuing Trespass

76.     Paragraphs 1-75 of this Complaint are hereby re-alleged and incorporated by reference herein.

77.     Count 4 is brought against Philips by all Plaintiffs except Margaret Lena.

78.     Under the common law of Massachusetts, a trespass is an act of physical interference with real property in the possession of another.  A continuing trespass occurs when the interference is ongoing.

79.     Philips' ongoing contamination of Plaintiffs' water with TCE, PCE, and Freon-113 physically interferes with real property in Plaintiffs' possession, and constitutes a continuing trespass.

## Count 5:  Negligence

80.     Paragraphs 1-79 of this Complaint are hereby re-alleged and incorporated by reference herein.

81.     Count 5 is brought against Philips by all Plaintiffs except Margaret Lena.

82.     Under the common law of Massachusetts, negligence is the breach of a duty of care to another that causes damage to that other.

83.     Philips/Amperex had a duty of care to all persons, including Plaintiffs, whose well water might be contaminated by a release of hazardous materials from the Site.

84.     Philips/Amperex breached their duty of care to Plaintiffs by (a) storing TCE and PCE in a corrodible UST at the Site; (b) failing to conduct weekly inspections of this UST prior to 1982; and (c) failing to monitor groundwater at the Site prior to 1982.  These acts and omissions led to the widespread contamination of groundwater and the contamination of Plaintiffs' well, causing the previously described damage to their properties, persons, and lives.  Philips is thus liable to Plaintiffs in negligence.

**Count 6:  Strict Liability for Abnormally Dangerous Activity**

85.     Paragraphs 1-84 of this Complaint are hereby re-alleged and incorporated by reference herein.

86.     Count 6 is brought against Philips by all Plaintiffs except Margaret Lena.

87.     Under the common law of Massachusetts, a person who engages in an abnormally dangerous activity is liable for any damage caused to another by such activity, regardless of the degree of care that he has exercised.  Among the primary factors in assessing whether an activity qualifies as "abnormally dangerous" are the degree of inherent risk posed by the activity and the gravity of potential harm to others.

88.     Given their hazardous nature, Philips/Amperex's storage of TCE and PCE in USTs at the Site was abnormally dangerous, irrespective of the degree of care exercised.  USTs are highly susceptible to leakage, and the gravity of harm threatened by leakage of TCE and PCE from USTs—the contamination of area drinking water—was great.  Philips is thus strictly liable for all of the previously described damage that its groundwater contamination has caused to Plaintiffs' properties, persons, and lives.

## VI.   JURY DEMAND

Plaintiffs demand a jury trial on all issues so triable.

## VII.   RELIEF REQUESTED

Plaintiffs request the following relief:

a.     A declaration that Philips has contributed "to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment,"

20

within the meaning of Section 7002(a)(1)(B) of RCRA, 42 U.S.C. §

6972(a)(1)(B);

b.      An injunction requiring that Philips provide an alternative and permanent source

of clean water for Plaintiffs and all persons in their vicinity whose wells are at

risk of contamination from the Site;

c.      An injunction requiring that, until and unless Philips provides an alternative and

permanent source of clean water for Plaintiffs and all persons in their vicinity

whose wells are at risk of contamination from the Site, Philips sample all wells at

risk of such contamination every three months;

d.      An award of damages to compensate Plaintiffs for the devaluation of their

properties;

e.      An award of damages to compensate Plaintiffs for their diminished enjoyment of

their properties and their associated psychological distress;

f.      An award of damages to compensate Plaintiffs for any out-of-pocket costs that

they have incurred, or will incur, due to the contamination of their water;

g.      An award of interest on any damages award, calculated at the Massachusetts

statutory interest rate of 12% per annum;

h.      An award of Plaintiffs' costs of litigation, including expert fees and attorney fees,

as provided by 42 U.S.C. § 6972(e) and M.G.L. c. 21E, § 15; and

i.      Such other relief as the Court deems appropriate.

Respectfully Submitted by the Plaintiffs,

BETH R. CRENSHAW,
MICHAEL M. CRENSHAW,
TYLER E. CRENSHAW,
SYDNEY A. MAYZER,

MARK A. MAYZER,
PATRICIA E. MALONEY,
GARY P. DULAC,
and MARGARET L. LENA,

By their Attorney:

*/s/ James P. Vander Salm*
James P. Vander Salm (BBO No. 663320)
Law Office of James P. Vander Salm
P.O. Box 501
Holden, MA  01520
tel. (413) 935-1890
jvandersalm@vandersalmlaw.com

Dated: July 5, 2023