**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| BETH CRENSHAW, MICHAEL M. CRENSHAW, TYLER E. CRENSHAW, SYDNEY A. MAYZER, MARK A. MAYZER, PATRICIA E. MALONEY, GARY P. DULAC, and MARGARET L. LENA,<br><br>Plaintiffs,<br><br>v.<br><br>PHILIPS NORTH AMERICA,<br><br>Defendant. | Civ. No.: 4:23-cv-40078-MRG |

**<u>MEMORANDUM AND ORDER ON</u>**
**<u>DEFENDANT'S MOTION TO DISMISS</u>**

**GUZMAN, D.J.**

Plaintiffs, Beth Crenshaw and seven others ("Plaintiffs"), bring this action under the citizen suit provision of the Resource Conservation and Recovery Act, 42 U.S.C. § 6901 *et seq.* ("RCRA"), the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, Mass. Gen. Laws ch. 21E, and common law theories of continuing private nuisance, continuing trespass, negligence, and strict liability for abnormally dangerous activity, alleging that Defendant Philips North America ("Philips") contaminated their wells by the release of chemicals into the groundwater. Philips moved to dismiss the action for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim.

After careful consideration of the parties' submissions and oral argument, Defendant Philips North America's Motion to Dismiss was **<u>GRANTED</u>** without prejudice by electronic order.

[ECF No. 36].[1] This Memorandum provides the Court's legal analysis and reasoning for its rulings on the motion to dismiss.

## I. BACKGROUND

The Court recites the facts from Plaintiffs' Complaint, [Compl., ECF No. 1], as well as matters appropriate for judicial notice, and assumes that they are true for the purposes of reviewing the pending Rule 12(b)(6) motions. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 572 (2007); Ruivo v. Wells Fargo Bank, N.A., 766 F.3d 87, 90 (1st Cir. 2014) (explaining that a reviewing court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)"). All plausible inferences are made in Plaintiffs' favor. Twombly, 550 U.S. at 572.

To the extent that Defendant's motion relies on evidence outside the Complaint for the purposes of its Rule 12(b)(1) motions, that evidence is separately addressed in the Discussion section.

### A. Relevant Facts

The eight Plaintiffs are, or recently have been, residents and/or owners of several residential properties in the Town of Millville, Massachusetts. [Compl. ¶ 2]. Plaintiffs Beth Crenshaw, Michael Crenshaw, and Tyler Crenshaw ("the Crenshaws") reside at 19B Providence

[1] "District Judge Margaret R. Guzman: ELECTRONIC ORDER entered. Upon careful consideration of the parties' submissions and oral argument, the Court hereby GRANTS [] Defendant Philips North Americas Motion to Dismiss for Lack of Jurisdiction as to the RCRA claim for all Plaintiffs, without prejudice to refile if the endangerment becomes imminent and substantial after implementation of the Post IRA Plan and any other follow up to the MCP process. The [] Providence Street Plaintiffs are connected to the municipal water service, which eliminates their risk and thus their standing to pursue a RCRA claim. Plaintiff Lena's well at 22 Providence Street continues to show no detection of contaminants and therefore precludes standing under RCRA. The Court also GRANTS Defendant Philips North America's [] Motion to Dismiss for Failure to State a Claim as to the remaining Counts for all Plaintiffs. A written order explaining the Court's reasoning will follow. (Frisch, Suzanne) (Entered: 10/07/2024)" [ECF No. 36].

Street in Millville, Massachusetts. [Id. ¶ 11]. 19B Providence Street is a unit in a condominium known as "Providence Street Condominium # 2." [Id.] Plaintiffs Sydney A. Mayzer and Mark A. Mayzer ("the Mayzers"), parents of Beth Crenshaw and grandparents of Tyler Crenshaw, have jointly owned the 19B Providence Street condominium unit since 2005, first in their individual capacities (between 2005 and 2017) and then as Trustees of the Mayzer Family Revocable Trust (between 2017 and the present). The Mayzers reside in Holliston, Massachusetts. [Id. ¶ 12].

Plaintiff Patricia Maloney owns and resides at 19A Providence Street, a unit in Providence Street Condominium # 2, in Millville, Massachusetts. [Id. ¶ 13]. Plaintiff Gary Dulac owned 19C Providence Street, a unit in Providence Street Condominium # 2, in Millville, Massachusetts, between 2004 and 2023. [Id. ¶ 14]. These seven plaintiffs, (the Crenshaws, the Mayzers, Patricia Maloney, and Gary Dulac) are collectively referred to in this Order as the "19 Providence Street Plaintiffs." The well that serves 19 Providence Street Plaintiffs is contaminated with the chemicals TCE, PCE, and 1,1,2-Trichloro1,2,2-trifluoroethane ("Freon-113"). [Id. ¶ 11].

Plaintiff Margaret Lena owns and resides at a single-family home at 22 Providence Street directly across the street from 19 Providence Street. [Id. ¶ 15]. There is no reported contamination of Plaintiff Lena's well. [Id. ¶¶ 40, 44, 48; ECF No. 25 at 5 n.4].

Defendant Philips North America, LLC ("Philips") is a limited liability company organized under the laws of Delaware and headquartered in Cambridge, Massachusetts. [Id. ¶ 16]. Philips is the successor to all liabilities of Philips Electronics North America Corporation ("PENAC"), North American Philips Corporation ("NAPC"), and Amperex Electronic Corporation ("Amperex"). [Id. ¶¶ 17–18]. Between approximately 1959 and 2000, Philips[2] owned and operated an electronic

[2] For ease of reference "Philips" will be used to identify Philips North America, LLC and its predecessors throughout the Order, unless otherwise indicated.

component manufacturing facility (the "Facility") at 51 Industrial Drive in North Smithfield, Rhode Island (the "Site").

From the 1960s into the 1980s, in connection with its manufacturing processes, Philips used, generated, and stored numerous chlorinated volatile organic compounds ("CVOCs") at the Site, including TCE, PCE, and Freon-113.[3] [Id. ¶ 20]. After being used, these chemicals were stored in one or more underground storage tanks ("USTs") at the Site pending their transport to a designated disposal facility. [Id.] Prior to 1982, Philips had no groundwater monitoring program at the Site, nor did they conduct testing of groundwater for CVOCs at the Site. [Id. ¶¶ 21–22]. At that time, Philips inspected its USTs at the Site no more than once every six months. [Id. ¶ 23].

In February of 1982, upon a joint inspection of the Site by the Rhode Island Department of Environmental Management ("RIDEM") and the United States Environmental Protection Agency ("EPA"), RIDEM cited Philips for failing to monitor groundwater and failing to conduct or record weekly inspections of its USTs. [Id. ¶ 24]. RIDEM ordered Philips to develop and implement a

[3] As alleged in the Plaintiffs' briefing and not contradicted in the Defendant's opposition,

> TCE is carcinogenic to humans by all routes of exposure—inhalation, oral ingestion, and dermal absorption. Prolonged exposure may increase the risk of kidney cancer, liver cancer, malignant lymphoma, and non-Hodgkin's lymphoma. Additionally, it may cause cardiovascular damage, neurological damage, immunological damage, and birth defects. [] PCE is likely carcinogenic to humans by all routes of exposure. Prolonged exposure may lead to an increased risk of kidney cancer, liver cancer, bladder cancer, multiple myeloma, and non-Hodgkin's lymphoma. [] Pursuant to the Safe Drinking Water Act, 42 U.S.C. § 300f et seq. ("SDWA"), the EPA sets Maximum Contaminant Levels (MCLs) for hazardous substances in public water systems. The MCL for both TCE and PCE is 5 µg/L. See 40 C.F.R. § 141.61. [] Pursuant to M.G.L. c. 111, § 160, MassDEP sets Massachusetts Maximum Contaminant Levels ("MMCLs") for hazardous substances in public water systems. The MMCL for both TCE and PCE is 5 µg/L. See 310 C.M.R. § 22.07B.

[Id. ¶¶ 31–34].

groundwater monitoring program at the Site, to inspect its USTs weekly, and to make records of such inspections. [Id.]

In 1982, pursuant to RIDEM's order, Philips began monitoring groundwater at the Site. Its monitoring revealed contamination of groundwater with chemicals including TCE, PCE and Freon-113. The source of the contamination was a leaking UST at the Site. [Id. ¶ 25]. Since 1982, under the supervision of RIDEM, Philips has taken various measures aimed at remediating the contamination at and around the Site, including soil removal and several methods of groundwater treatment. [Id. ¶ 27].

Notwithstanding the remediation efforts, high levels of CVOCs such as TCE have continued to be detected around the Site, particularly in several bedrock groundwater monitoring wells located to the north of the source area. [Id.] In 2004, TCE, PCE, and Freon-113 were detected in residential wells in North Smithfield, RI. [Id. ¶ 29]. In July 2015, TCE, PCE, and Freon-113 were detected in the well at 19 Providence Street in Millville, MA. North Smithfield and Millville are neighboring towns on either side of the Rhode Island-Massachusetts border. [Id. ¶ 28].

The contamination in the Millville residential wells was discovered when Plaintiff Beth Crenshaw had her water tested. [Id. ¶ 30]. In July of 2015, testing for the well for 19 Providence Street detected TCE at 17 µg/L and PCE was detected at 8.6 µg/L.[4] [Id. ¶ 36]. Informed of the

[4] As noted in Plaintiffs' briefing and not opposed in Defendant's filings,

> Pursuant to the Massachusetts Oil and Hazardous Material Release Prevention and Response Act, M.G.L. c. 21E, MassDEP sets levels of hazardous substances which, when detected in a private drinking water well, trigger the requirements for remedial response action. These levels are known as Reportable Concentration Groundwater-1 ("RCGW-1," or "GW-1") standards. See 310 C.M.R. §§ 40.0311(6), 40.0412(1), 40.0414. The GW-1 standard for both TCE and PCE is 5 µg/L. See 310 C.M.R. § 40.1600.

[Compl. ¶ 35].

contamination, MassDEP instructed the Crenshaws and their neighbors at 19 and 25 Providence Street (which draws from the same well) to stop drinking their water immediately. [Id.] MassDEP began providing bottled water for the residents and arranging for the installation of point-of entry water treatment systems (POET systems) in their buildings. The installations of the POET systems were completed in October of 2015. [Id.] The installation of the POET system reduces the TCE, PCE, and Freon-113 below laboratory detection limits for the water which reaches Plaintiffs, however, it does not address the actual contamination of the well. [Id. ¶ 47].

Since July 2015, sampling of the well at 19 Providence Street has consistently shown the presence of TCE, PCE, and Freon-113, with TCE and PCE consistently measuring above regulatory health standards. [Id. ¶ 37]. Between March of 2020 and July 2023, the average concentration of TCE has been 26.6 µg/L, while the average concentration of PCE has been 12.5µg/L; in contrast, between July of 2015 and February of 2020, the average concentration of TCE was 20.3µg/L, while the average concentration of PCE was 9.1µg/L. [Id.].

Following the discovery of TCE, PCE, and Freon-113 in the well, MassDEP spent several years investigating potential sources of the Providence Street contamination. It concluded that the Site was a potential source. [Id. ¶ 38]. On November 1, 2018, it issued to Philips a Notice of Responsibility (NOR) for the contamination. According to the NOR, after consultation with RIDEM and EPA, MassDEP believed that the Facility was a likely source "[g]iven the northerly groundwater flow direction, the high concentrations of CVOCs known to be present in the deep bedrock aquifer at [the Site], and the locations of impacted properties along Mechanic Street and Old Great Road and across the Massachusetts state boundary along Providence Street in Millville … ." [Id.] In response to the NOR, on December 13, 2018, Philips, through its consultant APTIM, filed a letter with MassDEP denying responsibility for contaminating the Providence Street wells.

Three years after denying responsibility, starting in 2021, Philips participated in certain Immediate Response Action (IRA) activities in connection with the Providence Street contamination. [Id. ¶ 39].

As outlined in an IRA Plan submitted to MassDEP by APTIM on behalf of Philips in November of 2021, Philips agreed to (1) assume responsibility for the operation, testing, and maintenance of the POET systems at 3, 19, and 25 Providence Street, (2) sample 18 additional residential wells in Millville in the vicinity of the contaminated properties, and (3) "if determined feasible," extend a North Smithfield municipal water line down Providence Street to service the contaminated properties. [Id. ¶ 40].

Philips conducted sampling of additional residential wells on Providence Street in 2022. In both April and July of 2022, its sampling revealed the presence of PCE in wells at 33 and 40 Providence Street. When these wells had last been sampled, in October of 2015, no PCE had been detected. [Id. ¶ 41]. In response to the detections at 33 and 40 Providence Street, Philips, through APTIM, declared to the owners of these properties that the levels of PCE in their wells were too low to warrant continued sampling. As of the filing of the Complaint, Philips was not conducting testing of these wells, nor had it provided the residents of 33 and 40 Providence Street with bottled water or filtration systems. [Id. ¶ 42].

**B. Procedural History**

Plaintiffs filed their Complaint on July 5, 2023. [See Compl.]. In September of that year, Defendant filed its Motion to Dismiss for Lack of Jurisdiction, or in the alternative, Motion to Dismiss for Failure to State a Claim. [ECF No. 9]. The Plaintiffs opposed the Motion to Dismiss, and the parties filed a reply and sur-reply on the pendant issues. [ECF Nos. 19, 22, 25]. In July 2024, prior to oral argument, the Defendant filed a Notice of Supplemental Authorities, directing

the Court to review a decision from the United States Court of Appeals for the Ninth Circuit, Santa Clarita Valley Water Agency v. Whittaker Corp., 99 F.4th 458 (9th Cir. 2024); and a Post IRA Monitoring Plan Submitted to MassDEP for the continued groundwater monitoring of the historical releases detected near 3, 19, and 25 Providence Street in Millville, Massachusetts. [ECF No. 30]. Plaintiffs ardently opposed the Notice of Supplemental Authorities the following day, attaching a Laboratory Report for July 2022 sampling at 40 Providence Street for the Court's consideration. [ECF No. 31].

Within that same month, the Court heard argument on the Motion to Dismiss and the submitted supplemental authorities. [ECF No. 32]. In September 2024, the Court entered an electronic order which granted the Motion to Dismiss as to the issue of subject matter jurisdiction and dismissed all claims without prejudice. [ECF No. 36].

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 12(b)(1): Motion to Dismiss Due to Lack of Subject Matter Jurisdiction

If a motion to dismiss for subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) and failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) are concurrently before a district court, "absent good reason to do otherwise, [the court] should ordinarily decide the 12(b)(1) motion first." Ayyadurai v. Galvin, 560 F. Supp. 3d 406, 410 (D. Mass. 2021) (quoting Ne. Erectors Ass'n of BTEA v. Sec'y of Lab., Occupational Safety & Health Admin., 62 F.3d 37, 39 (1st Cir. 1995)). "[S]tanding is a prerequisite to a federal court's subject matter jurisdiction." Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016). Therefore, "[a] motion to dismiss for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1) is appropriate when the plaintiff lacks standing to bring the claim." Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset

Acceptance Corp., 894 F. Supp. 2d 144, 150 (D. Mass. 2012) (quoting Edelkind v. Fairmont Funding, Ltd., 539 F.Supp.2d 449, 453 (D. Mass. 2008)). On a motion to dismiss for lack of subject-matter jurisdiction, "the party invoking the jurisdiction of a federal court carries the burden of proving its existence." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (quoting Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995), cert. denied, 515 U.S. 1144 (1995)). "If the party fails to demonstrate a basis for jurisdiction, the district court must grant the motion to dismiss." Id.

It is the Court's ongoing obligation to ensure that it has jurisdiction to opine on the matters before it, including Article III standing. See Pagán v. Calderón, 448 F.3d 16, 26 (1st Cir. 2006). Standing is assessed at the time of filing and must be maintained through the litigation. Carney v. Adams, 592 U.S. 53, 59 (2020); see Lujan v. Defs. Of Wildlife, 504 U.S. 555, 569 n.4 (1992) (noting the "longstanding rule that jurisdiction is to be assessed under the facts existing when the complaint is filed."). To establish standing, Plaintiffs must demonstrate (1) that they suffered an injury in fact that is concrete, particularized, and actual or imminent, (2) that the injury was caused by the defendant, and (3) that the injury would likely be redressed by the requested judicial relief. Lujan, 504 U.S. at 560–61. The injury is considered imminent "'if the threatened injury is 'certainly impending' or there is a 'substantial risk' that the harm will occur.'" Massachusetts v. United States Dep't of Health & Hum. Servs., 923 F.3d 209, 222 (1st Cir. 2019) (quoting Susan B. Anthony List v. Driehaus, 573 U.S. 149, 158 (2014)).

The district court "must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor" when ruling on a Rule 12(b)(1) motion. Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010) (citations omitted). A plaintiff cannot assert a proper jurisdictional basis "merely on unsupported conclusions or interpretations of law" or

"[s]ubjective characterizations or conclusory descriptions of a general scenario which *could* be dominated by unpleaded facts[.]" Murphy, 45 F.3d at 522 (citations omitted) (emphasis in original). When an issue of a plaintiff's standing is before a federal court, it may look beyond the pleadings to determine if jurisdictional facts exist. See Rothschild v. Cree, Inc., 711 F. Supp. 2d 173, 180 (D. Mass. 2010).

### B. Fed. R. Civ. P. 12(b)(6): Motion to Dismiss for Failure to State a Claim

To survive a motion to dismiss pursuant to 12(b)(6), the complaint must state a claim that is plausible on its face. Twombly, 550 U.S. at 570. In other words, the "[f]actual allegations must be enough to raise a right to relief above the speculative level, . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." Id. at 555 (citations omitted). Dismissal is appropriate if the complaint fails to set forth "factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." Gagliardi v. Sullivan, 513 F.3d 301, 305 (1st Cir. 2008) (quoting Centro Medico del Turabo, Inc. v. Feliciano de Melecio, 406 F.3d 1, 6 (1st Cir. 2005)). On a motion to dismiss for failure to state a claim, the factual allegations in the complaint are accepted as true, and the Court draws "all reasonable inferences in favor of the plaintiff." Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008) (citing Garita Hotel Ltd. P'ship v. Ponce Fed. Bank, F.S.B., 958 F.2d 15, 17 (1st Cir. 1992)).

## III. DISCUSSION

### A. COUNT I: The Resource Conservation and Recovery Act (RCRA)

The 19 Providence Street Plaintiffs and Plaintiff Lena bring a claim under the RCRA for Philips' handling, storage, and disposal of TCE and PCE at the site, and the resulting contamination of groundwater. Plaintiffs allege that this groundwater contamination presents an imminent and

substantial endangerment to the health of all persons who have been, or may be, exposed to such contaminated groundwater. [Compl. ¶ 57].

The Defendant argues that this Court should abstain from interfering with the ongoing MassDEP and RIDEM agency efforts to remediate the contamination at these properties, citing the Burford abstention doctrine; and, that Plaintiff Lena lacks standing to sue on any theory of liability under Article III. [See Def.'s Mem. Supp. Mot. Dismiss at 5–10, ECF No. 10]. Plaintiffs counter that the First Circuit has deemed judicial abstention in the RCRA citizen suit context as inappropriate in the majority of cases; and, that Plaintiff Lena's state of *risk* of an imminent or substantial endangerment to her health, rather than current actual harm, is sufficient to allege her Article III standing under the RCRA. [See Pl. Opp'n Mot. Dismiss at 2–10, ECF No. 19]. For the reasons which follow, the Court **grants** the motion to dismiss, dismissing the Plaintiffs' claims **without prejudice**.

The Resource Conservation and Recovery Act was enacted by Congress in 1976 "to end the environmental and public health risks associated with the mismanagement of hazardous waste." United States v. Kentucky, 252 F.3d 816, 822 (6th Cir. 2001) (citing Sierra Club v. United States Dep't of Energy, 734 F. Supp. 946, 947 (D. Colo. 1990)). The RCRA does this by prohibiting treatment, storage, or disposal of hazardous waste without a permit. See Sierra Club, 734 F. Supp. at 947; 42 U.S.C. §§ 6925(a), 6961. The RCRA's primary purpose is "to reduce the generation of hazardous waste" in the first place and "to ensure the proper treatment, storage, and disposal of that waste which is nonetheless generated, 'so as to minimize the present and future threat to human health and the environment.'" Meghrig v. KFC W., Inc., 516 U.S. 479, 483 (1996) (quoting 42 U.S.C. § 6902(b)). Pursuant to these statutory objectives, the RCRA contemplates that states will develop solid waste management plans in accordance with regulatory guidelines promulgated

by the EPA. See 42 U.S.C. §§ 6941–6949. The RCRA "expressly contemplates that state and local governments will play a lead role in solid waste regulation." Kentucky, 252 F.3d at 822.

The RCRA includes a "citizen suit" provision, which authorizes enforcement by citizens after notice to regulatory agencies, to "function as a form of statutory enforcement in addition to, or in conjunction with, enforcement by an administrative agency or other governmental entity." Chico Serv. Station v. SOL P.R. Ltd., 633 F.3d 20, 27 (1st Cir. 2011) (citing Esso Standard Oil Co. (P.R.) v. Rodrîguez-Pérez, 455 F.3d 1, 5 n.2 (1st Cir. 2006)); 42 U.S.C. § 6972 (RCRA). RCRA citizen suits are intended to "'complement, rather than conflict with' agency enforcement of the law." Id. (citing H.R. Rep. No. 98-198, pt. I, at 53 (1983), reprinted in 1984 U.S.C.C.A.N. 5576, 5612).

To obtain injunctive relief under RCRA's citizen suit provision, a plaintiff must show that (1) the defendant is "any person, . . . including any past or present generator . . . transporter, or . . . owner or operator of the treatment, storage, or disposal facility, (2) who has contributed or who is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste, (3) which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B); Center for Cmty. Action & Envtl. Justice v. BNSF Ry. Co., 764 F.3d 1019, 1021 (9th Cir. 2014). The Ninth Circuit has explained that "imminent and substantial endangerment," in the RCRA context must be construed liberally. Price v. United States Navy, 39 F.3d 1011, 1019 (9th Cir. 1994). Endangerment means "threatened or potential harm and does not require proof of actual harm." Id. Imminence "does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present"; indeed, "[a]n 'imminent hazard' may be declared at any point in a chain of events which may ultimately result in harm to the public." Id. (citation omitted). Substantial endangerment occurs

when the threatened harm is "serious" and there is need for remedial action to avoid the risk of harm. Id. The Supreme Court has clarified that "[a]n endangerment can only be imminent if it threatens to occur immediately," and that "may present" as written in the statute, "implies that there must be a threat which is present now, although the impact of the threat may not be felt until later." Meghrig 516 U.S. at 485–86 (internal quotation marks and citation omitted). "To establish an injury in fact based on a probabilistic harm, a plaintiff must show that there is a substantial probability that harm will occur." Me. People's Alliance v. Mallinckrodt, Inc., 471 F.3d 277, 284 (1st Cir. 2006) (citing Warth v. Seldin, 422 U.S. 490, 504 (1975) cert. denied, 552 U.S. 816 (2007)).

**a. As to the 19 Providence Street Plaintiffs**

After briefing and changes in circumstance, only Plaintiff Lena maintains a claim under the RCRA against Philips for the Court's consideration. [See Pl. Opp'n Mot. Dismiss at 12 n.4, ECF No. 19; ECF No. 22-2; Hr'g Tr., 39:18–24, ECF No. 33]. On January 5, 2024, after the Complaint was filed and prior to oral argument on this motion, the building at 19 Providence Street was fully connected to municipal water in lieu of the contaminated wells at issue in this case. [ECF No. 22-2]. Plaintiffs concede that the connection of 19 Providence Street to municipal water eliminates the 19 Providence Street Plaintiff's standing to bring a claim under the RCRA, as they are no longer at risk for future contamination. [Pl. Opp'n Mot. Dismiss at 12 n.4]. This concession was re-iterated during oral argument by Plaintiffs' counsel. [Hr'g Tr., 39:18–24 ("The issue that – we concede, by the way, explicitly that for those plaintiffs, who now have municipal water, those are the 19 Providence Street plaintiffs, [Y]our Honor, they no longer have standing, it is true. They are no longer at risk from this groundwater contamination; and therefore, we don't object with respect to the RCRA claim to the 19 Providence Street claim being dismissed.")].

As the 19 Providence Street Plaintiffs are no longer at imminent risk from groundwater contamination, they lack standing for their RCRA claims, and Count I, must be dismissed.

**b. As to Plaintiff Lena**

As noted, Plaintiff Lena resides across the street from the 19 Providence Street Plaintiffs at 22 Providence Street. [Compl. ¶ 15]. As of filing the Complaint, 22 Providence Street did not have any reported contamination, and therefore, was not included in the future sampling of wells in Millville, MA. [Id. ¶¶ 40, 44, 48; ECF No. 25 at 5 n.4]. Regardless, Plaintiffs assert that due to Lena's proximity to the contaminated wells, she is therefore at a "high risk of contamination." [Id. ¶ 44]. Philips argues that Plaintiff's risk of future injury is insufficient to establish an actual or imminent injury under Article III. [Def.'s Mem. Supp. Mot. Dismiss at 9–10]. The third prong under the RCRA analysis – that there must be a threat of imminent and substantial endangerment to health – impacts both the issue of Article III standing and whether Plaintiff Lena plausibly states a claim for relief under the 12(b)(6) standard. As detailed below, the Court determines that Plaintiff Lena lacks standing, and therefore, her claims must be dismissed without prejudice.

It is undisputed that since 1982 Philips has taken various measures aimed at remediating the contamination at and around the Site, under the supervision of RIDEM. [Compl. ¶ 27]. In the decades since the release of TCE, PCE, and Freon-113 at the Site, these contaminants have spread through bedrock groundwater northward. [Id. ¶ 28]. In 2015, these contaminants were discovered in the residential wells in Massachusetts at the center of this case and MassDEP became involved in regulating the contamination in the area. [Id. ¶ 36]. After investigation into the source of the contamination, MassDEP worked with Philips to combat the effects through an Immediate Response Action ("IRA") Plan, where Philips,

> agreed to (1) assume responsibility for the operation, testing, and maintenance of the POET systems at 3, 19[,] and 25 Providence Street, (2) sample 18 additional

> residential wells in Millville in the vicinity of the contaminated properties, and (3) "if determined feasible," extend a North Smithfield municipal water line down Providence Street to service the contaminated properties. [5]

[Id. ¶ 40].

There is no allegation that Philips has failed to satisfy the requirements of the IRA Plan set by MassDEP. [See id.]. Philips has remained under the oversight of RIDEM, and then MassDEP, since the contamination was discovered in 1982. [Id. ¶ 27]. At the time of filing this complaint, remediation efforts were underway on Providence Street and Plaintiff Lena's well tested negative for contaminants on several occasions. After filing this complaint, as previously stated, the municipal water line was extended to service the contaminated properties on Providence Street. [See Pl. Opp'n Mot. Dismiss at 12 n.4; ECF No. 22-2; Hr'g Tr., 39:18–24]. Additionally, Defendant supplemented its remediation efforts with a Post-IRA Monitoring Plan, which provides existing homeowner wells located within 500 feet of the former-contaminated wells at 3 and 19 Providence Street – including Plaintiff Lena's well at 22 Providence Street,– with access for a two year period of sampling for VOCs in their wells. [ECF No. 30-2 at 1–2].

Given the oversight from MassDEP and the ongoing efforts of remediation, monitoring, and testing, the Court concludes that Plaintiff Lena does not currently face an imminent and substantial endangerment to her health. At the time of filing, her well was uncontaminated and active monitoring and remediation efforts are underway in her neighborhood. Philips' supplementary monitoring Post-IRA provides additional support for this determination as it further limits the risk to Plaintiff Lena's well. See Sanchez v. Esso Std. Oil de P.R., No. 08-2151(JAF), 2010 U.S. Dist. LEXIS 103949, *19 (D.P.R. Sept. 29, 2010) ("An imminent and substantial

[5] Although Defendant agreed to the IRA, it continues to dispute whether the contamination found in Millville is a result of contamination from the Site. [Def.'s Mem. Supp. Mot. Dismiss at 3].

endangerment does not exist 'if the risk of harm is remote in time, speculative in nature, and de minimis in degree.'" (citing Smith v. Potter, 187 F.Supp. 2d 93, 98 (S.D.N.Y. 2001))); Kerin v. Titeflex Corp., 770 F.3d 978, 983 (1st Cir. 2014) ("[W]ere all purely speculative 'increased risks' deemed injurious, the entire requirement of 'actual or imminent injury' would be rendered moot, because all hypothesized, non-imminent 'injuries' could be dressed up as 'increased risk of future injury.'" (citing Ctr. for Law & Educ. v. Dep't of Educ., 396 F.3d 1152, 1161 (D.C. Cir. Ct. of App. 2005)); Mallinckrodt, 471 F.3d at 282 (The "mere presence" of contaminants "is alone not enough to constitute an imminent and substantial endangerment."). In conjunction with the fact that Plaintiff Lena's well is not contaminated, the Court views Philips' ongoing response efforts in cooperation with MassDEP and the regular monitoring of Plaintiff Lena's property to alleviate the potential of substantial endangerment to Plaintiff Lena such that she cannot establish the imminent injury prong for standing. However, if Plaintiff Lena's well does test positive in the screening process for contamination—or there are other indications of imminent endangerment to her health—then she may refile to pursue her claims.

As to the issue of property damage, Plaintiffs do not allege that Lena was harmed by diminution in property value, or that neighbors in similar circumstances, were harmed in selling or renting their homes for a below-market value due to the stigma of potential contamination. The potential risk of contamination to Plaintiff's property, as of now, remains speculative and therefore Plaintiff lacks adequate standing to pursue her claims. See Schneider v. BMW of N. Am., LLC, No. 18-CV-12239-IT, 2019 WL 4771567, at *2–3 (D. Mass. Sept. 27, 2019) (dismissing for lack of subject matter jurisdiction where plaintiffs' speculative allegations that they would suffer significant economic loss when they sell allegedly defective vehicles was hypothetical and unsupported by any factual allegations, such as a comparison of the present value of the vehicle to

the purchase price). Plaintiff asserts in her opposition to the motion to dismiss, that she need only allege that the contaminant plume imminently and substantially endangers the health of *any* person for her RCRA claim to advance. [Pl. Opp'n Mot. Dismiss at 10–11]. Plaintiff cites no case law in support of this assertion, and facts alleged here are distinguishable from the cases cited in support of her standing argument in general. Unlike the cases cited in Plaintiffs' briefs, this case is not brought by an environmental group, an association, nor as a class action, but by eight specific Plaintiffs alleging contamination of their personal wells, diminished property values, and injunctive relief which would benefit themselves and their neighbors generally. See Lujan, 504 U.S. 555 (action brought by a wildlife organization alleging general environmental harms); Mallinckrodt, 471 F.3d at 279 (action brought by environmental interest groups alleging mercury contamination in the Penobscot River); Dauge v. City of Burlington, 935 F.2d 1343, 1355–56 (2nd Cir. 1991), rev'd on other grounds by City of Burlington v. Dague, 505 U.S. 557 (1992) (action brought by individual plaintiffs alleging harms to wetlands, the Winooski River, and resulting personal property damage); United States v. Price, 688 F.2d 204 (3rd Cir. 1982) (action brought by the EPA alleging threat to public water supply). In each of these cases, the plaintiffs either pleaded that they would suffer imminent endangerment to their own health or pleaded that the environment such as, watersheds, fish species, or agricultural land, were endangered due to the inaction of the regulatory bodies ordained to intervene when contamination occurred. Here, Plaintiff Lena's well is uncontaminated, there are no general environmental claims asserted, and regulators are actively working with Philips to remediate and limit contamination, which decreases the likelihood of substantial harm occurring in the future.

Even though the proposed injunctive relief may benefit individuals who are not named in this case, there must be one litigant that maintains standing on their federal claim for this case to

move forward in federal court. Town of Chester v. Laroe Estates, Inc., 581 U.S. 433, 439 (2017) ("For all relief sought, there must be a litigant with standing[.]"). The Court resolves this case on Article III standing grounds; however, the same result follows under the doctrine of ripeness. "The doctrines of standing and ripeness 'originate' from the same Article III limitation," and, in cases such as this one, "standing and ripeness issues . . . 'boil down to the same question.'" Driehaus, 573 U.S. at 157 n.5 (quoting DaimlerChrysler Corp. v. Cuno, 547 U.S. 332, 335 (2006), and MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128 n.8 (2007)). "In both the standing and ripeness inquiries . . . we ask 'whether the harm asserted has matured sufficiently to warrant judicial intervention.'" Jensen v. Rhode Island Cannabis Control Comm'n, 160 F.4th 18, 24 (1st Cir. 2025) (quoting Sindicato Puertorriqueño de Trabajadores v. Fortuño, 699 F.3d 1, 10 n.5 (1st Cir. 2012)). For the reasons already discussed, it has not.

Accordingly, Defendant's Motion to Dismiss for lack of subject matter jurisdiction as to the RCRA claim, for Plaintiff Lena, must be **GRANTED.** The claim is dismissed without prejudice.

**a. Burford Abstention**

Defendant requests that the Court dismiss or stay this matter on the authority of Burford v. Sun Oil Co., 319 U.S. 315 (1943), arguing that Defendant has been actively engaged in remediation efforts for forty years at the Site, coordinated by RIDEM, and has diligently responded to groundwater impacts in Millville under the direction of MassDEP. Defendant states that due to the ongoing nature of the remediation project, the Court must abstain from reviewing the facts of this case. [See Def.'s Memo. at 5–9]. Because the Court lacks subject matter jurisdiction, the Court will not reach the merits for whether the Burford abstention doctrine applies. Indeed, doing so would be tantamount to issuing an advisory opinion, which this Court must always avoid doing.

See e.g., Hall v. Beals, 396 U.S. 45, 48 (1969) ("The case has [] lost its character as a present, live controversy of the kind that must exist if we are to avoid advisory opinions on abstract propositions of law . . . ") (citations omitted).

**B. COUNTS II–VI: State Law Claims**

This Court has jurisdiction over this action pursuant to 42 U.S.C. § 6972(a)(1)(B) (the RCRA's citizen suit provision), 28 U.S.C. § 1331 (federal question jurisdiction), and 28 U.S.C. § 1367(a) (supplemental jurisdiction). [Compl. ¶ 5]. Having determined that Plaintiffs' imminent and substantial endangerment claim under the RCRA is not properly before this Court, the Court has the authority to decline adjudication of the merits for the remaining state-law claims. 28 U.S.C. 1367(c)(3); see Lambert v. Fiorentini, 949 F.3d 22, 29 (1st Cir. 2020) ("[a]s a general principle, the unfavorable disposition of a plaintiff's federal claims at the early stages of a suit . . . will trigger the dismissal without prejudice of any supplemental state-law claims.") (citations omitted); Ryan v. UMass Mem'l Health, 728 F. Supp. 3d 215, 221 (D. Mass. 2024). As the Supreme Court has stated:

> It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties . . . if the federal claims are dismissed before trial . . . the state claims should be dismissed as well.

United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966) (citations omitted).

Therefore, the Court will **DISMISS** Counts II-VI **without prejudice**.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant Philips North America's Motion to Dismiss for Lack of Jurisdiction as to Count I, the RCRA claim for all Plaintiffs, **without prejudice** to refile if the endangerment becomes imminent and substantial. The Court declines to

adjudicate the merits of the pending state law claims. Therefore, Counts II-VI are dismissed **without prejudice**.

**SO ORDERED**.

/**s**/ *Margaret R. Guzman*
Margaret R. Guzman
United States District Judge

Dated: August 14, 2026